$ 250.00 DEPOSITED

SEP 27 2012

SECURE COSTS
GERALD E. FUERST, Clerk of Courts
PER _____ DEPUTY

IN THE COURT OF COMMON PLEAS
FOR CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| **DORA OATMAN**<br>2105 Westburn Avenue<br>East Cleveland, Ohio 44112 | : <br> : <br> : | Case No.      Complaint<br>JOHN P O'DONNELL<br>Judge    CV 12 792397 |
| Plaintiff, on her own behalf and<br>on Behalf of the Class defined<br>herein, | : | **CLASS ACTION COMPLAINT** |
| | : | Action for Mandatory Injunctive Relief,<br>Damages, and Class Certification |
| v. | : | |
| | | (Jury Demand Endorsed Hereon) |
| **INFOCISION, INC.**<br>325 Springside Drive<br>Akron, Ohio 44333<br>Care of Statutory Agent:<br>    Gary L. Taylor<br>    325 Springside Drive<br>    Akron, Ohio 44333 | : <br> : <br> : <br> : <br> : <br> : | Dennis E. Murray, Sr. (0008783)<br>dms@murrayandmurray.com<br>Margaret M. Murray (0066633)<br>mmm@murrayandmurray.com<br>Charles M. Murray (0052083)<br>cmm@murrayandmurray.com<br>Florence J. Murray (0080292) |
| and | | fjm@murrayandmurray.com<br>Patrick G. O'Connor (0086712) |
| **INFOCISION MANAGEMENT<br>CORPORATION, A/K/A IMC**<br>725 Market Street<br>Wilmington, Delaware 19801<br>Care of Statutory Agent:<br>    InfoCision, Inc.<br>    325 Springside Drive<br>    Akron, Ohio 44333 | : <br> : <br> : <br> : | patrick.oconnor@murrayandmurray.com<br>MURRAY & MURRAY CO., L.P.A.<br>111 E. Shoreline Drive<br>Sandusky, Ohio 44870<br>Telephone: (419) 624-3000<br>Facsimile: (419) 624-0707 |
| Defendants. | : <br> : <br> : <br> : <br> : <br> : | J.M. Kelley III (0061990)<br>jkelley@elkandelk.com<br>John P. O'Neil (0067893)<br>joneil@elkandelk.com<br>Phillip A. Kuri (0061910)<br>pkuri@elkandelk.com<br>ELK & ELK Co., Ltd.<br>6105 Parkland Blvd.<br>Mayfield Heights, Ohio 44124<br>Telephone: (440) 442-6677<br>Facsimile: (877) 355-1355 |
| | : | Attorneys for Plaintiff |

Plaintiff Dora Oatman, through her undersigned counsel, commences this action against Defendants InfoCision, Inc. and InfoCision Management Corporation, also known as IMC, on her own behalf and on behalf of the Class defined hereinafter.

## PARTIES

1. Plaintiff Dora Oatman is a natural person residing in East Cleveland, Cuyahoga County, Ohio.

2. Defendant InfoCision Management Corporation is or was a Delaware corporation first registered with the Ohio Secretary of State in 1982 with its principal place of business in Akron, Ohio. InfoCision Management Corporation is currently a registered trade name owned by InfoCision, Inc. IMC is a fictitious name filed with the Ohio Secretary of State in 2003 by InfoCision Management Corporation for the purpose of telemarketing.

3. Defendant InfoCision, Inc. is a Delaware corporation with its principal place of business in Akron, Ohio 44333. InfoCision, Inc. became the legal name of InfoCision Management Corporation in 2011 by amendment filed with the Ohio Secretary of State.

4. Defendant InfoCision, Inc., Defendant InfoCision Management Corporation and IMC will hereinafter be referred to collectively as "InfoCision".

5. InfoCision is engaged in the business of telemarketing. Since 1982, InfoCision has been conducting solicitation campaigns throughout the United States, including Ohio. InfoCision conducts or has conducted telephone and mail solicitations on behalf of various charitable organizations.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are proper in this Court because Plaintiff resides in Cuyahoga County, Ohio, and the conduct which gives rise to this cause of action occurred in Cuyahoga County through the direct solicitation of the Plaintiff in her home.

## FACTS AND SUBSTANTIVE ALLEGATIONS

7. InfoCision was begun in 1982 in Summit County, Ohio for the purpose of consulting with profit and non-profit organizations as to marketing and management. One of the stated functions of InfoCision was to raise funds for these organizations. InfoCision claims to be the nation's second-largest privately held teleservices company and a leading provider of direct marketing solutions for Fortune 100 companies and nonprofit organizations. www.infocision.com.

8. InfoCision states that one of its guiding principles is a commitment to excellence which, InfoCision claims, underscores its total and uncompromising commitment to quality and integrity.

9. InfoCision holds contracts with some of the largest and most well-known American charitable organizations, including the American Diabetes Association, the American Cancer Society and the March of Dimes Foundation, among many others.

10. InfoCision is a "professional solicitor" as defined in R.C. 1716.08, which sets forth strict rules of conduct regarding the manner in which such professional solicitors may act in soliciting donations in the name of charitable organizations with which it enters into contracts.

11. The aforementioned statute requires a professional solicitor to, among other things: identify itself as a professional solicitor and provide its name as it appears on file with the Attorney General; and, if requested by the solicited party, provide the "fixed percentage of the gross revenue or the reasonable estimate of the gross revenue" that the charitable organization will receive under the terms of the specific contract under which the professional solicitor is operating.

3

12. Despite raising millions of dollars for various charitable organizations, most, and sometimes all, of the money raised by the fundraising activities of InfoCision is paid to InfoCision for these activities, rather than remaining with the charitable organization.

13. Additionally, InfoCision instructs all of its telemarketers to intentionally misrepresent to potential donors how much of their contribution will reach those in need.

14. For instance, the signature page of InfoCision's 2011 contract with the American Diabetes Association ("ADA") (obtained from the September 12, 2012 report filed by David Evans on the Bloomberg Report website, http://www.bloomberg.com/news/2012-09-12/charities-deceive-donors-unaware-money-goes-to-a-telemarketer.html, with highlighting and a comment added by the reporter, and attached as Exhibit 1) estimated that InfoCision would raise $4,600,000 in revenues for the charity, but the contract also stated that InfoCision would retain $3,900,000, or 85%, of that revenue, leaving only 15% of the revenue to be passed along to those in need.

15. According to the Internal Revenue Service Form 990 filed by ADA for calendar year 2011, however, ADA paid InfoCision $4,894,270 for "Professional Fundraising and Consulting".

16. The amounts paid by ADA to InfoCision as reported on the IRS Form 990 steadily increased through the years. In 2008, ADA reported to the IRS that it paid $1,873,062 to InfoCision. In 2009, ADA reported payments of $2,692,004 to InfoCision for "Professional Fundraising and Consulting". In 2010, ADA paid $4,686,387 to InfoCision for the same purpose.

17. The mission of the ADA, as stated in its 2011 Form 990, "is to prevent and cure diabetes and to improve the lives of all people affected by diabetes. There are 26 million

children and adults in the United States, or 8.3% of the population, who have diabetes. In addition, there are 79 million Americans who have pre-diabetes, a condition that occurs when a person's blood glucose levels are higher than normal but not high enough for a diagnosis of type 2 diabetes." Although the number of Americans affected by diabetes or elevated glucose levels has changed through the years, the mission has remained constant.

18. At the time that InfoCision entered into its 2011 contract with the ADA, InfoCision provided its telemarketers with a script (a one-page portion of which was obtained from the September 12, 2012 report filed by David Evans on the Bloomberg Report website, http://www.bloomberg.com/news/2012-09-12/charities-deceive-donors-unaware-money-goes-to-a-telemarketer.html, with highlighting and a comment added by the reporter, and is attached as Exhibit 2) wherein InfoCision instructed its telemarketers to represent to potential donors that "about 75% of every dollar received goes directly to serving people with diabetes and their families ***. The other 25% goes to program management."

19. InfoCision's work for the American Cancer Society ("ACS") in 2009 serves as another example of InfoCision's intentional misrepresentations.

20. The mission of ACS as stated in its 2009 IRS Form 990 is "to eliminate cancer as a major health problem by preventing cancer, saving lives, and diminishing suffering from the disease, through research, education, advocacy, and service." That mission is unchanged from the 2008 IRS Form 990 and the ACS website. www.cancer.org/AboutUs/ACSPolicies/state-fundrasing-notices.

21. In 2008, ACS reported to the IRS that it paid InfoCision $5,396,482 as a professional fundraiser. The "gross receipts from activity", that is, professional fundraising, was $5,804,708 for 2008. ACS accordingly netted $408,226 from the fundraising of InfoCision.

Although InfoCision directs consumers to the Form 990s for "a comprehensive summary of an organization's good stewardship of the funds entrusted to them", www.npr.org/2012/09/12/160997044.when-telemarketers-pocket-money-meant-for-charity, the cost to ACS to utilize the professional fundraising skills of InfoCision increased in 2009. According to the IRS Form 990 submitted by ACS for calendar year 2009, ACS paid $5,448,969 to InfoCision but the amount raised as a result of that fundraising was only $5,335,963. Accordingly, ACS posted a loss of $113,006 for fundraising activity that year. Incidentally, ACS only posts the 2008 and 2009 Form 990s on its website.

22. As demonstrated by the script, dated September 1, 2009, that InfoCision provided to its telemarketers to utilize in a campaign for the ACS (a one-page portion of which was obtained from the September 12, 2012 report filed by David Evans on the Bloomberg Report website, http://www.bloomberg.com/news/2012-09-12/charities-deceive-donors-unaware-money-goes-to-a-telemarketer.html, with highlighting and a comment added by the reporter, and is attached as Exhibit 3), InfoCision instructed its telemarketers to represent to potential donors that "about 70 cents of every dollar received goes to the programs and services that we provide."

23. In its Annual Fundraising Activity Report (the "Report") filed in the State of Maine (a two-page portion of which was obtained from the September 12, 2012 report filed by David Evans on the Bloomberg Report website, http://www.bloomberg.com/news/2012-09-12/charities-deceive-donors-unaware-money-goes-to-a-telemarketer.html, with highlighting and a comment added by the reporter, and is attached as Exhibit 4), the ACS reported that for the fiscal year beginning on September 1, 2009, and ending on August 31, 2010, InfoCision retained more money than it actually raised for the charity. The Report states that InfoCision raised

6

$5,335,963 for the charity but that it retained $5,448,969. This data mirrors that reported by ACS on its 2009 IRS Form 990.

24. These documents demonstrate that InfoCision telemarketers were representing to potential donors that 70% of their donations would go to the ACS while, in fact, the charity received none of it.

25. In addition to soliciting direct donations from individuals, InfoCision also recruits those individuals "to participate in special events or write letters to their family and friends requesting a donation". www.infocision.com/Company/Info/Resources/Resources/NP-Call%20Center%20VOverview-110910-LOW.pdf. In this process, InfoCision ships direct mail kits for fundraising and volunteer recruitment after recruiting those volunteers by means of a telephone campaign. *Id.*

### Facts Specific to Plaintiff Oatman

26. During the relevant Class Period, as defined below, upon information and belief, Plaintiff Oatman received at least one call from an InfoCision representative purportedly raising money on behalf of the ADA.

27. Plaintiff Oatman was told by that InfoCision representative that a greater percentage of her donation would go the ADA than what the ADA actually received or will actually receive.

28. Plaintiff Oatman relied on the misrepresentation described in the preceding paragraph in determining whether to donate money to the ADA.

29. Plaintiff Oatman then transferred money directly to the ADA.

30. During the relevant Class Period, as defined below, Plaintiff Oatman also received at least one call from an InfoCision representative purportedly raising money on behalf of the ACS and the American Heart Association ("AHA").

31. Plaintiff Oatman was told by that InfoCision representative that a greater amount of her donation would go ACS and AHA than what ACS and AHA actually received or will actually receive.

32. Plaintiff Oatman relied on the misrepresentation described in the preceding paragraph in determining whether to transfer money to ACS and AHA.

33. Plaintiff Oatman then transferred money directly to ACS and AHA.

34. In addition to funds contributed directly by Plaintiff Oatman to these charitable organizations, Plaintiff Oatman also received direct mail kits with envelopes ostensibly from these charitable organizations to which she affixed a return address and U.S. postage and added the names and addresses of her neighbors, family members and friends. Plaintiff Oatman posted these envelopes with written solicitations enclosed based on the understanding that funds raised a result of this activity would benefit the charitable organizations identified. Upon information and belief, Plaintiff Oatman received these direct mail kits as a result of telephone contact by InfoCision. Upon information and belief, Plaintiff Oatman was requested to and did in fact send these envelopes with the written solicitations enclosed on behalf of ADA and/or ACS.

## CLASS ALLEGATIONS

35. The Ohio statute of limitations applicable to the causes stated herein is R.C. 2305.09 and, accordingly, the Class Period ("Class Period") would be 4 years prior to the date of commencement of this action. This Class Period is based, in part, on fraud and is tolled by the discovery rule. Accordingly, the Class Period encompasses all tortious actions of InfoCision from the time the Class discovered the fraudulent conduct of InfoCision.

36. Plaintiff brings this action pursuant to Civ.R. 23(B), on her own behalf and on behalf of a Class of Plaintiffs ("the Class"). The Class is defined as:

8

> All persons in the United States who, during the Class Period, through the present, (1) received a telephone solicitation call from an InfoCision representative on behalf of a charitable organization; (2) were told by that InfoCision representative that a greater percentage of their donation would go to the charitable organization than what the charitable organization actually received or will actually receive; and, (3) transferred money either directly to the charitable organization or to InfoCision to be donated to the charitable organization or posted written solicitations to others using the Class Member's postage and/or return address.

37. The Class Members are so numerous that joinder is impracticable.

38. There are questions of law and fact common to the Class Members, which predominate over any questions that affect only individual Class Members. The predominant common questions include:

    a. Whether the Defendants received monetary donations from the Class Members on behalf of charitable organizations;

    b. Whether the Defendants disseminated a company-wide policy of misrepresenting to the Class Members how much of their contributions would go to the charitable organization;

    c. Whether the Defendants knew that their representations to the Class Members were false;

    d. Whether the Defendants' retention of some, or all, of the Class Members' donations is or was wrongful; and,

    e. Whether this matter is properly maintained by the Class Representative as a nationwide class under Ohio law based upon the fact that the Defendants' principal place of business is and has been in the State of Ohio.

39. The claims of the Plaintiff are typical of the claims of the Class Members. All

9

claims are based on the same facts and the same legal theories. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to this Plaintiff.

40. Plaintiff will fairly and adequately represent the interests of the Class Members. Plaintiff has retained counsel experienced in class and complex litigation.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

    a. Plaintiff is seeking final equitable relief with respect to the entire class;

    b. The potential recovery of class members will be large enough in relation to the expense and effort in administering the action to justify a class action; and,

    c. Prosecution as a class action will eliminate the possibility of repetitious litigation.

42. A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

43. Plaintiff does not anticipate any difficulty in the management of this litigation.

44. The primary relief presently sought by the Plaintiff for herself and the Class is to secure Injunctive Relief to enjoin Defendants from continuing to intentionally mislead the Class Members and other potential donors, and only thereafter to secure Monetary Relief, as hereinafter set forth.

45. A class action is superior to other alternative methods of adjudicating this dispute. The Plaintiff for herself and the Class Members seek Injunctive and Monetary Relief which will apply to and benefit thousands, if not millions of Class Members.

## COUNT I
## FRAUD

46. Plaintiff repeats and incorporates herein all previously well plead averments.

47. InfoCision instructed its telemarketers to read a script to Plaintiff and the Class Members which misrepresented the percentage of the donations that the charitable organization would or will receive. These misrepresentations were material to the solicitation of charitable contributions and were made falsely, with knowledge of their falsity or with utter disregard and recklessness as to whether true or false such that knowledge may be inferred. Plaintiff and the Class Members justifiably relied on InfoCision to follow the law and to receive only those amounts which its telemarketers represented InfoCision would receive. As a direct and proximate result of the Plaintiff's and the Class Members' reliance on the representations of InfoCision in its scripts, the Plaintiff and the Class Members sustained injury in excess of $25,000.

## COUNT II
## NEGLIGENT MISREPRESENTATION

48. Plaintiff repeats and incorporates herein all previously well plead averments.

49. InfoCision provided scripts to its telemarketers to be used in the course of making solicitation calls to Plaintiff and the Class Members on behalf of charitable organizations. The scripts included misrepresentations regarding the percentage of the contributions that the charitable organizations would or will receive.

50. InfoCision knew that Plaintiff and the Class Members would rely on those misrepresentations in determining whether to make a contribution. Plaintiff and the Class Members did, in fact, justifiably rely on those misrepresentations in making their contributions and/or in participating in the direct mail kit program.

51. As a direct and proximate result of InfoCision's negligent misrepresentations, the Plaintiff and the Class Members sustained injury in excess of $25,000.

## COUNT III
## UNJUST ENRICHMENT

52. Plaintiff repeats and incorporates herein all previously well plead averments.

53. Plaintiff and the Class Members have conferred a benefit upon InfoCision, to wit: funds paid and/or raised as a result of the direct mail kit campaign by Plaintiff and the Class Members of which all or most were paid to InfoCision by the charitable organizations; InfoCision knew and knows of that benefit; and, InfoCision has retained those benefits despite the knowledge that it is unjust to do so.

54. To the extent that Plaintiff and the Class Members have already made charitable contributions to charitable organizations as a result of InfoCision's direct solicitation, InfoCision has retained a greater percentage of those contributions than it represented to Plaintiff and the Class Members that it would. Accordingly, InfoCision has been unjustly enriched at the expense of Plaintiffs and the Class Members.

55. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class Members are entitled to a judgment requiring InfoCision to remit to Plaintiff and the Class Members an amount to proven at trial.

**WHEREFORE**, Plaintiff Dora Oatman, on behalf of herself and the Class, demands judgment against InfoCision, Inc. and InfoCision Management Corporation, a/k/a IMC, for the actual losses suffered in an amount in excess of Twenty-Five Thousand Dollars ($25,000), compensatory damages to be determined by a duly impaneled jury, for prejudgment interest thereon, for punitive damages, for the costs of this action, and for reasonable attorney fees.

Plaintiff further prays for an order declaring this action to be a class action properly maintained pursuant to Civ.R. 23 and further certifying herself as class representative and her counsel as class counsel. Plaintiff further prays for such other legal or equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all such matters as may properly be submitted to a jury.

*/s/ Margaret M. Murray*
Dennis E. Murray, Sr. (0008783)
dms@murrayandmurray.com
Margaret M. Murray (0066633)
mmm@murrayandmurray.com
Charles M. Murray (0052083)
cmm@murrayandmurray.com
Florence J. Murray (0080292)
fjm@murrayandmurray.com
Patrick G. O'Connor (0086712)
patrick.oconnor@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio 44870
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

_____
J.M. Kelley III (0061990)
jkelley@elkandelk.com
John P. O'Neil (0067893)
joneil@elkandelk.com
Phillip A. Kuri (0061910)
pkuri@elkandelk.com
ELK & ELK Co., Ltd.
6105 Parkland Blvd.
Mayfield Heights, Ohio 44124
Telephone: (440) 442-6677
Facsimile: (877) 355-1355

Attorneys for Plaintiff

## PRAECIPE TO THE CLERK

Please cause the Class Action Complaint to be served, by certified mail, return receipt requested, upon each Defendant at following addresses:

(1) **INFOCISION, INC.**
325 Springside Drive
Akron, Ohio 44333
Care of Statutory Agent:
    Gary L. Taylor
    325 Springside Drive
    Akron, Ohio 44333

(2) **INFOCISION MANAGEMENT CORPORATION**
325 Springside Drive
Akron, Ohio 44333
Care of Statutory Agent:
    InfoCision, Inc.
    325 Springside Drive
    Akron, Ohio 44333

                                                     Margaret M. Murray (0066633)
                                                     MURRAY & MURRAY CO., L.P.A.

                                                     Attorney for Plaintiff

L201036400034 CSL Completed Date: 12/30/2010

- ° Price will vary depending on style and quantity.
- °° Price will vary depending on average length of calls and dispersion of call volume.
- °°° This cost per call is for volunteer recruitment only. It does not include Gift Ask Requests or any additional test calls.

▷ IMC's estimated expenses total $3,900,000. Revenue estimate is $4,600,000. There is a $3.08 per kit charge not managed by IMC.

Attached hereto and marked Exhibit I are provisions that may be required by various states.

In Witness Whereof, the parties have executed this Agreement as of the last date set forth below.

**American Diabetes Association**

▷ By: _Larry Hausner_  
Printed Name: _Larry Hausner_  
Title: CEO  
Date: 12/10/10

By: _[signature]_  
Printed Name: M Vanessa Bennett  
Title: E.V.P.  
Date: 12/20/10

**InfoCision Management Corporation**

By: _[signature]_  
Printed Name: Carl Albright  
Title: President & CEO  
Date: 10/15/10

By: _[signature]_  
Printed Name: Mike Cook  
Title: Vice President of Marketing  
Date: 10/14/10

▼

Larry Hausner, the American Diabetes Association's CEO, signed this contract for the association's 2011 volunteer fundraising campaign with InfoCision. Hauser's signature is just inches below the telemarketer's estimate that it will be paid $3.9 million of the $4.6 million in expected revenue. That's 85 percent of the money to be raised. **DAVID EVANS**

*Source: American Diabetes Association's 2011 contract with InfoCision (page 22 of 35)*

PLAINTIFF'S EXHIBIT 1 — ALL-STATE LEGAL®

American Diabetes Association
ADAR - Spring 2010 Residential (CCFD)
COPYRIGHT © INFOCISION MANAGEMENT CORPORATION - 2010

**IF ADAMANT NO:** Close for No to Volunteer

---

### Page: Just Received a Letter to Donate
<PRESENTATION GIVEN/><LAST_NAME/>, we are working so hard to end the devastating effects of diabetes that sometimes our fundraising efforts overlap. We are asking for your help to mail pre-printed letters to your neighbors, which wouldn't take place until <SCRIPT VARIABLE/>.

May we count on your help, <PRESENTATION GIVEN/><LAST_NAME/>?

**IF YES:** Capture Name and Address for Yes

**IF GIFT OFFERED:** **Gift Offered**

**IF NO:** ** No to Volunteer Ask **

**IF ADAMANT NO:** Close for No to Volunteer

> This 2010 script used by InfoCision to recruit volunteers to raise money for the American Diabetes Association instructs solicitors to tell the people they call that "overall, about 75% of every dollar received goes directly to serving people with diabetes and their families, through programs and research. The other 25% goes to program management." Actually, in 2010, most of the money that InfoCision raised for the association went to the telemarketing company. — DAVID EVANS
>
> Source: InfoCision's script (page 29 of 38) on behalf of the American Diabetes Association

---

### Page: Money Breakdown
Overall, <PRESENTATION GIVEN/><LAST_NAME/>, about 75% of every dollar received goes directly to serving people with diabetes and their families, through programs and research. The other 25% goes to program management.

Return to Point of Interruption

**IF WHAT IS THE % FOR THIS SPECIFIC PHONE CAMPAIGN:** We don't know exactly <PRESENTATION GIVEN/><LAST_NAME/>, because we're in the midst of the campaign right now. But I assure you it is *VERY* worthwhile, and is included in our overall cost of fundraising.

<PRESENTATION GIVEN/><LAST_NAME/>, can you help us, and the over 20 million Americans who struggle with diabetes every day by volunteering?

**IF YES:** Capture Name and Address for Yes

**IF GIFT OFFERED:** **Gift Offered**

**IF NO:** **No to Volunteer Ask**

**IF ADAMANT NO:** Close for No to Volunteer

---

### Page: Why Don't You Mail the Letters?
<PRESENTATION GIVEN/><LAST_NAME/>, the reason we ask you to [mail or sign the letters] is because we have found that a personal touch of the information coming from a friend or neighbor raises more money for our research.

May we count on your help, <PRESENTATION GIVEN/><LAST_NAME/>?

Monday, May 10, 2010     29

PLAINTIFF'S EXHIBIT 2

American Cancer Society, National
ACNR - Fall FY10 Notes to Neighbors (Survey)
COPYRIGHT © INFOCISION MANAGEMENT CORPORATION - 2009

We will process your request immediately. I'm sorry for any inconvenience. Have a nice [day/evening]. Goodbye. Mark call with NP (No Phone) Comment Code and hit Inquiry button.

End Call As No to Volunteer

---

**Page: First Request to Residential Donor (Test)**
I'm calling to thank you for your past support and ask for your help in a different way this year!

<PRESENTATION GIVEN/> <LAST_NAME/>, because of the support of caring people like you, we've made great strides in our mission to fight cancer and create a world with more birthdays. We're calling today to ask for your help once again by mailing <VR_BLOCKSIZE_WITH_MAX/> preprinted letters to your neighbors on <VR STREET/> (Wrong Address) in <SCRIPT VARIABLE/>. We give you everything you need; you just address the envelopes and provide a stamp for each.

I'll send your kit in <SCRIPT VARIABLE/>, okay <PRESENTATION GIVEN/> <LAST_NAME/>?

Enter Presentation Given: <PRESENTATION GIVEN/>

| YES | or | ** NO ** <LEGISLATIVE MESSAGE/> |

No $ By Phone            Get to the Point

**If Gift Offered**      **Adamant No**

End Call As Call Back    End Call As Hang Up

---

▶ **Page: Money Breakdown**
Overall, <PRESENTATION GIVEN/><LAST_NAME/>, about 70 cents of every dollar received goes to the programs and services that we provide.

**IF ASKED: WHAT IS THE % FOR THIS SPECIFIC PHONE CAMPAIGN?** I can assure you that the American Cancer Society's fundraising expenses meet or exceed the Better Business Bureau's standards for charitable solicitations. If you'd like more information visit the Society's website at www.cancer.org.

Return to Point of Interruption

**Page: Who Is ACS?**
The American Cancer Society is a nationwide, ( chartered divisions throughout the country and ( (ACS) is committed to fighting cancer through b service, advocacy, and rehabilitation.

Return to Point of Interruption

**Page: Close for Yes to Volunteer - Survey**

Tuesday, September 01, 2009                      27

> When asked about the "money breakdown," InfoCision's telemarketers were instructed to tell prospective Notes to Neighbors program volunteers that "overall, about 70 cents of every dollar received goes to the programs and services we provide." Actually, the majority of the money raised for the American Cancer Society by InfoCision went to the telemarketing company.    **DAVID EVANS**
>
> *Source: InfoCision's script (page 27 of 202) on behalf of the American Cancer Society.*

PLAINTIFF'S EXHIBIT
ALL-STATE LEGAL®
3

## CHARITABLE ORGANIZATION

## ANNUAL FUNDRAISING ACTIVITY REPORT (MAINE)

### Report Solicitations For Most Recent Fiscal Year

| CHARITABLE ORGANIZATION INFORMATION (please print) |||
|---|---|---|
| NAME OF CHARITABLE ORGANIZATION  American Cancer Society, Inc. |||
| LICENSE #: CO |||
| MAILING ADDRESS  250 Williams Street, NW, Suite 400 |||
| CITY  Atlanta | STATE  GA | ZIP  30303-1002 |
| PHONE # (800) 227-2345   FAX # (800) 417-8011 || E-MAIL: |
| Fiscal Year: | From: 9/1/2009 | To: 8/31/2010 |

| Dates of Fundraising Campaign: | From: 09-01-2009 | To: 08-31-2010 |
|---|---|---|
| Total dollar amount raised from contributions from this campaign: || $ 368,976,523 |

| Dates of Fundraising Campaign: | From: | To: |
|---|---|---|
| Total dollar amount raised from contributions from this campaign: || $ |

| Dates of Fundraising Campaign: | From: | To: |
|---|---|---|
| Total dollar amount raised from contributions from this campaign: || $ |

| Dates of Fundraising Campaign: | From: | To: |
|---|---|---|
| Total dollar amount raised from contributions from this campaign: || $ |

### COMPLETE THIS SECTION FOR ENTIRE FISCAL YEAR

| Total dollar amount raised from contributions for the Fiscal Year: | $ 368,976,523 |
|---|---|

Did you contract with a Professional Solicitor? [X] Yes  [ ] No   If yes, complete page 2. The Professional Solicitor must be licensed in Maine.

Did you contract with a Professional Fund-Raising Counsel? [X] Yes  [ ] No   If yes, complete page 3. The Professional Fund-Raising Counsel must be licensed in Maine.

Did you contract with a Commercial Co-Venturer? [ ] Yes  [X] No   If yes, complete page 4. The Commercial Co-Venturer must be licensed in Maine.

| By my signature, I hereby certify that the information provided on this annual fund-raising activity report is true and accurate to the best of my knowledge and belief. ||
|---|---|
| Name (Printed or Typed)  Catherine E. Mickle, CFO | Title (Printed or Typed)  Chief Financial Officer |
| Signature: | Date: 11-1-11 |

---

This annual fundraising report, filed by the American Cancer Society and signed by Chief Financial Officer Catherine Mickle on Nov. 1, 2011, shows that the "total dollar amount retained" by Akron, Ohio–based InfoCision exceeded the "total dollar amount raised from contributions."

*Source: American Cancer Society's 2010 Annual Fundraising Activity Report (pages 1 and 2 of 5) filed with Maine*



PLAINTIFF'S EXHIBIT 4

Professional Solicitor - Photocopy as needed

| NAME OF PROFESSIONAL SOLICITOR | | | |
|---|---|---|---|
| Infocision Management Corporation | | | |
| LICENSE #: PS | | | |
| MAILING ADDRESS 325 Springside Drive | | | |
| CITY Akron | STATE OH | ZIP 44333 | |
| PHONE # ( ) | FAX # ( ) | E-MAIL: jhay@cckc-law.com | |
| Dates of Fundraising Campaign: | From: 09 /01 /2009 | To: 08/31/2010 | |
| Total dollar amount raised from contributions from this campaign: | | $ | 5,335,963 |
| Total dollar amount retained by professional solicitor for campaign: | | $ | 5,448,969 |

| NAME OF PROFESSIONAL SOLICITOR | | | |
|---|---|---|---|
| LICENSE #: PS | | | |
| MAILING ADDRESS | | | |
| CITY | STATE | ZIP | |
| PHONE # ( ) | FAX # ( ) | E-MAIL: | |
| Dates of Fundraising Campaign: | From: / / | To: / / | |
| Total dollar amount raised from contributions from this campaign: | | $ | |
| Total dollar amount retained by professional solicitor for campaign: | | $ | |

| NAME OF PROFESSIONAL SOLICITOR | | | |
|---|---|---|---|
| LICENSE #: PS | | | |
| MAILING ADDRESS | | | |
| CITY | STATE | ZIP | |
| PHONE # ( ) | FAX # ( ) | E-MAIL: | |
| Dates of Fundraising Campaign: | From: / / | To: / / | |
| Total dollar amount raised from contributions from this campaign: | | $ | |
| Total dollar amount retained by professional solicitor for campaign: | | $ | |

| NAME OF PROFESSIONAL SOLICITOR | | | |
|---|---|---|---|
| LICENSE #: PS | | | |
| MAILING ADDRESS | | | |
| CITY | STATE | ZIP | |
| PHONE # ( ) | FAX # ( ) | E-MAIL: | |
| Dates of Fundraising Campaign: | From: / / | To: / / | |
| Total dollar amount raised from contributions from this campaign: | | $ | |
| Total dollar amount retained by professional solicitor for campaign: | | $ | |

COMPLETE THIS SECTION FOR ENTIRE FISCAL YEAR

| Total dollar amount raised from contributions for the Fiscal Year: | $ | 5,335,963 |
|---|---|---|
| Total dollar amount retained by professional solicitor for the Fiscal Year: | $ | 5,448,969 |